IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-00720-CMA-MJW

EVANSTON INSURANCE COMPANY, an Illinois corporation, as successor by merger to Essex Insurance Company,

    Plaintiff,

v.

BRYAN CONSTRUCTION, INCORPORATED, *a/k/a* Federal Contracting, Inc., a Colorado corporation,

    Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff Evanston Insurance Company's Motion for Summary Judgment, wherein Plaintiff argues that it is entitled to a declaratory judgment that its commercial property insurance policy for Defendant Bryant Construction, Inc. did not cover Defendant's claimed losses as a matter of law. (Doc. # 22.) For the reasons discussed below, the Court grants Plaintiff's Motion for Summary Judgment.

## I.    BACKGROUND

Defendant, a commercial general contractor, constructed the Cherry Hills Assisted Living Facility ("CHAL") in Centennial, Colorado, in 2016. (Doc. # 1 at 3.) Defendant purchased a commercial property insurance policy (the "Policy") for the

project from Plaintiff in March 2016.[1]  (*Id.* at 2.) The Policy, bearing number MKLX14PP006149, was in effect from January 15, 2016, through January 15, 2017. (*Id.*); *see* (Doc. # 22-1 at 12–29.)

Plaintiff was bound by the Policy to "pay for direct physical loss of or damage to **Covered Property** at the premises described in the Declarations caused by or resulting from a **Covered Cause of Loss**." (Doc. # 22-1 at 17) (emphases added).  The Policy specifically defined "Covered Property" at Section I.A. as including "Building, meaning the building or structure described in the Declarations." (*Id.*)  The Declarations in turn stated that "Covered Property" included "Building" and "Real Property in the Course of Construction."[2]  (*Id.* at 12.)  The Policy also contained a coverage extension for debris removal, but the coverage extension explicitly did not apply to the "cost or expense of . . . removal of water, soil or any other uninsured substance on or under any Covered Property." (*Id.* at 19–20.)  Relevant here, the Policy covered "Flood" as a "Covered Cause of Loss," with a limit of $500,000 per occurrence and $500,000 in aggregate and subject to a $25,000 deductible per occurrence.  (*Id.* at 14–15, 29.)

The Policy specifically did **not** include and eliminated from coverage "Property Not Covered," defined at Section I.B.  (*Id.* at 18–19.)  It excluded from coverage, among other things: "[b]ridges, tunnels, dams, trestles, culverts;" "[b]ulkheads, pilings that are not part of a building, piers, wharves, docks, seawall, dams or canals;" "[t]he cost of excavations, grading, backfilling or filling;" "[l]and (including land on which the Covered

---

[1] Plaintiff Evanston Insurance Company is the successor by merger to Essex Insurance Company, which issued the Policy.  (Doc. # 1 at 2.)
[2] The Policy did not define "Real Property in the Course of Construction."  (Doc. # 22-1 at 12.)

2

Property is located), air or water;" "[l]iving organisms of any kind . . . including plants, trees, lawns or shrubs;" "[r]etaining walls that are not part of a building;" and "[u]nderground pipes, flues or drains." (*Id.*)

Defendant's CHAL project was in a flood zone and adjacent to Big Dry Creek. (Doc. # 22 at 5.) The project therefore required Defendant to build a temporary dam, called a "cofferdam," with riprap material (large rocks) and a plastic membrane, and to re-route the creek channel. (*Id.* at 6; Doc. # 23 at 2.) Defendant also graded the creek channel, made erosion and sediment control improvements, and planted native willow bundles, cottonwoods, and native grasses in the course of re-routing Big Dry Creek. (Doc. # 22 at 6.)

In March and April 2016, the location of CHAL experienced severe snowstorms and resultant snowmelt. (*Id.* at 7.) Snowmelt produced significant runoffs on March 23–24, 2016, and on April 16–21, 2016. (*Id.*) The runoffs flooded the creek, destroyed Defendant's cofferdam, and eroded the creek channel and embankment. (*Id.*) According to Defendant, necessary repairs to the creek channel included clearing out sediment in the stream stabilization area; repairing the cofferdam; repairing the final stream stabilization area, including reseeding; and repairing the eroded area adjacent to the cofferdam. (*Id.* at 7–8.) The flooding did not damage the CHAL building or the building structure. (*Id.* at 8.)

Defendant asserts that the cost to repair the flood damage was $147.579.00. (Doc. # 23 at 2.) It also states that it incurred "additional costs . . . during the time

required to repair the flood damage" of $118,545.00. (*Id.*) Defendant submitted a claim for these losses to Plaintiff on June 10, 2016. (*Id.*)

Plaintiff disclaimed coverage for Defendant's losses in a letter dated December 6, 2016. (Doc. # 22-1 at 276–78.) Plaintiff summarized therein the factual findings of its retained inspector and adjustor: first, Defendant "had damage to the temporary dam as well as the retaining wall . . . This required rebuilding the damage, repairs to the wall as well as fixing the damage to the modified flood plain," and second, Defendant's claim for "additional costs" and delay costs "appear to be cost and schedule impacts from the additional repair work, apparently for the two-month delay in the project. This appears to be associated with business income." (*Id.* at 276.) Plaintiff cited the "Property Not Covered" section of the Policy and explained to Defendant:

> [A]ll of the property which you claimed as damaged is specifically excluded, and therefore, there is no coverage provided for this claim. You [sic] claim for Additional General Conditions & Delay Costs is also not covered because, per the above, this is not direct physical loss or damage to Covered Property. In addition, your policy does not provide Business Income Coverage.

(*Id.* at 277.) Accordingly, Plaintiff informed Defendant that "no payment [would] be made under the [P]olicy for this loss." (*Id.* at 278.)

Defendant disputed Plaintiff's denial of coverage in a letter dated January 25, 2017. (Doc. # 1-9.) Defendant characterized the Policy as "ambiguous" and stated that it therefore "must be interpreted and construed against [Plaintiff] and for a finding of coverage." (*Id.* at 2.) According to Defendant, the Policy was ambiguous because it purported to cover "Real Property in the Course of Construction" but excluded "land," "dams," and other things from its definition of "Covered Property." (*Id.*) Defendant

asked rhetorically, "if coverage exists for flood damage to 'Real Property in the Course of Construction,' how can no coverage exist for flood damage to 'Land' under [the Policy]? It cannot." (*Id.*) Defendant also clarified that it was not seeking "'general conditions and delay costs' which may be excluded from the Policy because they are not direct physical loss of or damage to Covered Property. [Defendant] is seeking the direct costs it incurred repairing the 'Real Property in the Course of Construction' damaged due to the covered flood events." (*Id.* at 3.)

On March 21, 2017, Plaintiff filed its Complaint for Declaratory Judgment against Defendant. (Doc. # 1.) Plaintiff seeks a declaratory judgment in its favor "declaring and concluding that: (1) [Defendant's] claimed flood loss at [CHAL] construction project is not covered by the Policy, and (2) Defendant . . . is not entitled to any payment from [Plaintiff] for its claimed loss." (*Id.* at 11.) Defendant submitted its Answer on April 28, 2017. (Doc. # 12.)

Plaintiff filed the Motion for Summary Judgment now before the Court on October 26, 2017. (Doc. # 22.) Defendant timely responded on November 16, 2017 (Doc. # 23), to which Plaintiff replied on November 29, 2017 (Doc. # 24). The case has been stayed pending the Court's resolution of Plaintiff's Motion for Summary Judgment. *See* (Doc. # 27.)

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper

disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that

would support a verdict in her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III. DISCUSSION

### A. PRINCIPLES OF CONTRACT INTERPRETATION

Under Colorado law, a court construes an insurance policy's terms according to traditional principles of contract interpretation.[3] *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991). When interpreting a contract, the court seeks to give effect to the intent and reasonable expectations of the parties. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). Terms should therefore be assigned their "plain and ordinary meaning," unless the parties intend otherwise. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 2004).

Colorado law also recognizes that "unlike a negotiated contract, an insurance policy is often imposed on a 'take-it-or-leave-it' basis." *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998). A court therefore "assume[s] a 'heightened responsibility' in reviewing insurance policy terms to ensure that they comply with 'public policy and principles of fairness.'" *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501–02 (Colo. 2004) (quoting *Huizar*, 952 P.2d at 244). Accordingly, ambiguous terms in an insurance policy are construed against the insurer. *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 166 (Colo. 1993).

---

[3] A federal court, sitting in diversity, must apply the substantive law of the forum state. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

7

Finally, exclusionary clauses "designed to insulate particular conduct from general liability coverage provisions must be drafted in clear and specific language." *American Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991) (citing *Ryder Truck Rental, Inc. v. Guaranty Nat'l Ins. Co.*, 770 P.2d 1380 (Colo. App. 1989)). In order to benefit from an exclusion in an insurance contract, the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations. *Id*. (citing *Hecla*, 811 P.2d at 1090).

**B.     APPLICATION**

1.     The Policy Is Not Ambiguous

Defendant asserts that the Policy is ambiguous and therefore "must be construed in favor of coverage." (Doc. # 23 at 14) (citing *Worsham Const. Co., Inc. v. Reliance Ins. Co.*, 687 P.2d 988, 990 (Colo. App. 1984), *cert. denied*). The Policy is ambiguous, according to Defendant, "because the provisions are inconsistent. If 'land,' 'dams,' etc. are excluded under the Policy, it is unclear what 'Real Property in the Course of Construction' covers besides what is already covered by 'Building.'" (*Id.*) Defendant reasons that "Real Property in the Course of Construction" must cover something different than "Building," or it would otherwise be superfluous and the Policy would be illusory. (*Id.* at 14–15.)

The Policy is unambiguous. First, it is undisputed that the plain language of the Policy is not ambiguous. *See* (*id.* at 16.) Second, Defendant's argument that ambiguity arises from a conflict between the Policy's provisions fails to persuade the Court. Although Defendant characterizes its argument as being about ambiguity, the Court

thinks the more correct label for Defendant's argument is that the Policy is an illusory contract.  *See* (Doc. # 24 at 5.)  "If an insurance contract covers some risk that the parties can reasonably anticipate, it is not illusory."  *Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 844 (Colo. App. 2008) (citing *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 14 F.3d 875, 879 (7th Cir. 1999)).  A coverage exclusion is illusory only when it "in effect allow[s] the insurer to receive premiums when realistically it is not incurring any risk of liability."  *Id.* at 843 (quoting *O'Connor v. Proprietors Ins. Co.*, 696 P.2d 282, 285 (Colo. 1985)).  Colorado law requires that courts "be cautious in applying this rule, however, to avoid frustrating the purposes for coverage."  *Id.* at 843–44 (citing *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 86 (Colo. App. 1997)).

The Policy is not an illusory contract.  The coverage for "Real Property in the Course of Construction" provided coverage for some realistic risks, even though "land" was excluded from coverage as "Property Not Covered."  *See* (Doc. # 24 at 6.)  "Real Property in the Course of Construction" obviously contemplates an incomplete building—*e.g.*, a newly-poured foundation or framing.  Risk to an incomplete, being-constructed building segment is a realistic one, and it is distinct from risk to "Building."  The Policy's definition of "Building" bolsters this clear understanding, as it defines "Building" as including "[**c**]**ompleted** additions," among other things.  (Doc. # 22-1 at 17) (emphasis added).

Because the Policy is neither ambiguous nor illusory, the Court need not construe it in Defendant's favor.

9

### 2. The Policy Did Not Cover Defendant's Claimed Property Damage

The Policy simply did not provide coverage for Defendant's temporary damn, creek channel embankment, and the surrounding areas. As Plaintiff explains in its Motion for Summary Judgment, the only "direct physical loss of or damage to" property from the flooding was to property specifically identified as "Property Not Covered" in the Policy. *See* (Doc. # 22 at 14.) The flooding damaged the creek and its channel, the cofferdam, the floodplain, and the surrounding soil and plants. (Doc. # 23 at 2.) Each of these is either "land", "dams" "grading, backfilling or filling" or "living organisms"—and each of these categories is expressly listed in the Policy as "Property Not Covered." *See* (Doc. # 22-1 at 18–19.) Defendant's claim for $147,579.00 for the cost to repair the flood damage, *see* (Doc. # 23 at 2), therefore fails.

### 3. The Policy Did Not Cover Defendant's Claimed "General Conditions" or Delay Damages

Defendant's claim for $118,545.00 in "additional costs incurred . . . during the time to repair the flood damage" also fails. This claim represents costs to Defendant from having construction delayed for two months, including supervision costs (*e.g.*, additional labor costs), management costs (*e.g.*, additional months of equipment rental), and other schedule impacts. *See* (Doc. # 22 at 16–17.) The Court agrees with Plaintiff that these costs arose because the flood damage of the dam and creek bed delayed completion of the CHAL building project. (*Id.* at 17.) Nothing in the Policy provided for coverage of consequential economic losses from delays in construction.

Defendant's argument that these delay costs were covered by the Policy because they were directly related to repairing damage to insured property damaged by the floods does not move the Court. First, this argument assumes that the damn and creek bed were covered by the Policy. The Court has already rejected this assumption for the reason described above. Second, the Policy is clear that Plaintiff was obligated to pay "for **direct physical loss of or damage to Covered Property** . . . caused by or resulting from a Covered Cause of Loss." (Doc. # 22-1 at 17.) The delay costs are not a direct physical loss from the flooding. Defendant's argument depends on multiple leaps of causation that the Policy does not provide for.

For these reasons, the Court concludes that Defendant's claimed losses at CHAL were not covered by the Policy.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. # 22) is GRANTED. It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

DATED: April 12, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge